**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RICHARD P. KAPLAN,** | : |
| **Plaintiff** | : |
| | : **CIVIL ACTION NO. 3:14-0605** |
| **v.** | : |
| | **(JUDGE MANNION)** |
| **MR. EBERT, <u>et</u> <u>al</u>.,** | : |
| **Defendants** | : |

## MEMORANDUM

## I. Background

Plaintiff, Richard P. Kaplan, an inmate confined in the Federal Correctional Institution, Otisville, New York, filed the above captioned action pursuant to the Federal Tort Claims Act ("FTCA") and Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). (Doc. 1, complaint). He also requests relief pursuant to the Freedom of Information Act, 5 U.S.C. §552(a)(4)(B). Specifically, Kaplan alleges that: (1) his due process rights under the 14th Amendment were violated when he was denied an attorney visit in August 2010; (2) his 5th, 6th, and 8th Amendment rights were violated when documents were concealed from him after filing a FOIA request, and; (3) he was "set-up" on murder for hire charges, falsely imprisoned for the set-up, and Defendants conspired against him to deprive him of an attorney visit. (Doc. 1, complaint). The named Defendants are Mr. Ebert, FCI-Allenwood Warden; Mr. Schrader, FCI-Allenwood Counselor; and John Doe,

FCI-Allenwood Visitation Officer.

Presently before the Court is Defendants' motion to dismiss and/or for summary judgment. (Doc. 28). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendant's motion to dismiss and for summary judgment will be granted.

Also before the Court is Plaintiff's motion for an "emergency injunction forcing Defendants to cease all constitutional violations such as withholding discovery/interference with access to the courts and fraudulent concealing the fact that they conspired to set Mr. Kaplan up before his arrest and during his incarceration" (Doc. 38) and Plaintiff's motion for a hearing on his motion for injunctive relief. (Doc. 39). Based on the Court's decision infra, Plaintiff's motions will be denied.

## II.  **Standards of Review**

### A. **Bivens Standard**

Plaintiff's claims are filed pursuant to 28 U.S.C. §1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor.

Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. §1983 and the same legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D.Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D.Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D.Pa. 1992).

### B. Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v.

UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211

(quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of [42 U.S.C. §1997e](#) apply, as do the screening provisions of [28 U.S.C. §1915(e)](#), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. <u>See</u>, <u>e.g.</u>, [Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000)](#). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. <u>See</u> <u>Lopez</u>; [Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007)](#), aff'd, [264 Fed App'x. 183 (3d Cir. 2008)](#).

### C. <u>Summary Judgment</u>

Pursuant to [Federal Rule of Civil Procedure 56(a)](#) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." [Fed.R.Civ.P. 56(a)](#); <u>see also</u> [Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)](#). "[T]his standard provides that the mere existence of some alleged

5

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion

lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U .S. at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir.1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

## III.    **Statement of Facts**[1]

---

[1]Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall included a
(continued...)

On September 6, 2007, Kaplan was sentenced in the United States District Court of New Jersey to a 30 month term of imprisonment for receiving corrupt payments in violation of 18 U.S.C. §666(A)(1)(B). (Doc. 31-1 at 4, Declaration of Susan Albert, Paralegal Specialist at the Federal Correctional Complex, Allenwood, Pennsylvania).

On March 16, 2010, Kaplan was sentenced in the United States District Court of New Jersey to an additional 108 month term of imprisonment for the use of interstate commerce facilities in the commission of murder-for-hire in violation of 18 U.S.C. §1958. Id.

Kaplan was designated and incarcerated at the Federal Correctional Institution, Fairton, New Jersey from October 22, 2007, through February 10, 2009, at which time he was transferred to the Federal Correctional Institution

---

[1](...continued)
separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement (Doc. 35) will be deemed admitted.

Fort Dix, New Jersey. Id. Kaplan remained at Fort Dix until October 6, 2009. Id. Kaplan arrived at FCI-Allenwood, Pennsylvania, on May 11, 2010 and remained there until February 2, 2012. Id. Kaplan arrived at FCI-Otisville, New York on May 3, 2012. Id. He currently remains incarcerated there. Id. His records are transferred with him. Id.

By correspondence dated August 30, 2010, Attorney Timothy J. Dey, notified Plaintiff that he came to visit Plaintiff on April 29, 2010 and was told he could not see him. (Doc. 2 at 9, Aug. 30, 2010 Letter from Attorney Dey). He indicated that he attempted to get in touch with Plaintiff's case manager and was told he was not in. Id. He then left a voice message for Plaintiff's case manager to return his call to discuss why he was not allowed to see Plaintiff and what needed to be done so that he would be able to visit with Plaintiff as soon as possible. Id.

On August 30, 2010, Plaintiff wrote to Warden Ebert, notifying him of his denial of an attorney visit. (Doc. 2 at 11, Aug. 30, 2010 letter from Plaintiff). Plaintiff referenced his letter as "a formal complaint", sought damages in the sum of $2000.00 and stated that he is "on a time restraint to the appellate courts" and for him "to go through administrative remedies would be futile." Id.

On September 25, 2010, Kaplan submitted a request pursuant to the Freedom of Information Act (FOIA) and Privacy Act (PA) to the Federal

Bureau of Prisons ("BOP"), where it was received on October 25, 2010. (Doc.

31-1 at 14, Request).

By letter dated March 31, 2011, the Northeast Regional Office for the

BOP responded to Kaplan's request with the following:

> This is in response to your request for records that was received by this agency on October 25, 2010. Specifically, you request a copy of the following related records for John Garafolo or John Garafolo and yourself; (A) FBI 302 Reports; (B) DEA Form 6 Reports; (C) all investigative reports and memorandum reports; (D) all note book and log book entries; (E) all accusatory instruments; (F) all affidavit and witness statements; (G) all Sprint/911 tapes and/or transcripts; (H) any and all photographs, video and audio tapes; (I) any and all docket sheets; (J) any and all plea agreements, judgments, commitments and Statement of Reasons; (K) any and all informant reports; (L) all cooperation agreements, 5K1 Letters, or motions under Federal Rules of Civil Procedure, Rule 35(b); (M) any and all booking sheets, pedigree information sheets and FBI Fingerprint Classification records and (N) any Master Document indices maintained by the Bureau of Prisons.
>
> In response to your request for any and all Judgment and Commitment, in accordance with the Bureau of Prisons' Program Statement 1351.05, Release of Information, you may seek a local review of your Central File by contacting staff at your institution to make arrangements for review. Please be aware that you cannot possess a copy of your Pre-sentence report.
>
> In response to your request for other records, a search was conducted and no records were found responsive to your request. Please be advised these records are not maintained by the Bureau of Prisons.
>
> I trust that this has been responsive to your request. However, if

you are dissatisfied with your response, you may appeal to the Attorney General by filing a written appeal. Your appeal must be received by the Office of Information Policy within sixty days from the date of this letter in order to be considered timely. You may appeal to the Attorney General by filing a written appeal to: Attorney General, Office of Information Policy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-001. Both the envelope and the letter of appeal itself should be clearly marked: "Freedom of Information Act Appeal."

(Doc. 31-1 at 12-13, Northeast Regional Office Response).

On April 8, 2013, Plaintiff submitted an informal resolution (BP-8), complaining that while housed at FCI-Allenwood, his "constitutional rights to be represented by counsel and due process was maliciously and blatantly denied and violated by the F.C.I." (Doc. 2 at 36, Informal Resolution Form).

On April 27, 2013, Plaintiff's informal resolution was reviewed and Plaintiff was informed that his "request couldn't be handled at this level." Id.

On May 2, 2013, Plaintiff filed Administrative Remedy No. 734103-F1, complaining that the attorney was denied admittance because "he was not [Plaintiff's] attorney of record at the time." (Doc. 2 at 23, Request for Administrative Remedy).

On June 7, 2013, the Warden's secretary discovered a May 13, 2013 Rejection Notice "misplaced in mail" and forwarded it to Kaplan. (Doc. 2 at 32, Rejection Notice - Administrative Remedy). The Notice informed Plaintiff that

his Administrative Remedy No. 734103-F1 was rejected because "a claim for monetary damages must be filed under the Federal Tort Claims Act." Id.

On June 13, 2013, Plaintiff filed Regional Administrative Remedy Appeal No. 734103-R1, complaining about the denial of his attorney visit in 2010. (Doc. 2 at 29-30, Regional Administrative Remedy Appeal).

By Response dated June 24, 2013, Warden Hufford, informed Plaintiff of the following:

> This is in response to your Request for Administrative Remedy dated May 2, 2013, in which you claim your rights to be represented by counsel, and due process were maliciously and blatantly denied by the institution. You request compensation for inconvenience, mental anguish and suffering.
>
> The Administrative Remedy Program does not provide monetary relief. To seek monetary damages, you must file a claim with the Regional Counsel under the Federal Tort Claims Act.
>
> Based on the above information, this response is for information purposes only. If you are dissatisfied with this response, you may appeal to the Regional Director, Northeast Regional Office, Federal Bureau of Prisons, U.S. Customs House, 8th Floor, 2nd and Chestnut Street, Philadelphia, Pennsylvania, 19106.

(Doc. 2 at 61, Response to Administrative Remedy No. 734103-F1).

On June 27, 2013, Plaintiff wrote to Warden Hufford, acknowledging receipt of his response, informing him that he had already appealed to the Northeast Regional Office, and inquiring as to if that appeal was still

proceeding in light of the Warden's response. (Doc. 2 at 60, June 27, 2013 letter from Plaintiff).

On June 28, 2013, Plaintiff filed Central Office Administrative Remedy Appeal No. 734103-F1), complaining of his denial of attorney visit and questioning "a mis-interpretation on the B.O.P. perspective on what the definition is to the word compensation." (Doc. 2 at 13-14, Central Office Administrative Remedy Appeal).

By letters dated September 9, 2013 and September 16, 2013, Plaintiff wrote to the General Counsel, inquiring as to the status of his Central Office Administrative Remedy Appeal No. 734103-F1. (Doc. 2 at 25, 41, letters from Plaintiff to General Counsel).

On November 1, 2013, Plaintiff submitted an Inmate Request to Staff, stating that he "need[ed] the transcripts of the conversation that [he] had on the phone on 10/28/2013 at 2:59:21 and 10/28/2013 at 1:29:46." (Doc. 31-1 at 20, Inmate Request to Staff). Plaintiff stated that he was "ready to submit a motion to the court and those transcripts are the proof that I made the calls" and the he needed "to show the court what that conversation was about." Id.

Plaintiff's Inmate Request was responded to with the response that his request must be submitted to the BOP Office of General Counsel. Id.

On November 12, 2013, Plaintiff submitted a request to the BOP Office of General Counsel for release of "transcripts and/or audio recordings" of the two phone calls he placed. (Doc. 31-1 at 18, Request). Plaintiff's request was received by the BOP Northeast Regional Office on November 18, 2013. Id.

On November 27, 2013, Plaintiff filed Administrative Claim No. TRT-NER-2014-00129 with the Northeast Regional Officer, where it was received on December 3, 2015. (Doc. 31-1 at 9-10, Claim for Damage, Injury or Death). He stated the basis of his claim as follows:

> On or about September, 2010 while housed at F.C.I. Allenwood, the Warden Ebert, Captain and Administration violated my Constitutional Rights to Due Process when retained attorney Mr. Timothy J. Dey of the law firm of Timothy J. Dey and my private investigator Mr. Richard River, both of New Jersey was blaintly (sic) and maliciously denied access in the F.C.I. Allenwood Facility for an attorney client preparation for defense for the trial proceedings in Applicant's criminal and divorce, to which Mr. River was investigating both proceedings. The restriction which the F.C.I. Allenwood administration facilitated against my constitutional rights to due process was in violation to the BOP's Program Statement OPI: Occ No. 5267.08 date 11/5/99 Subject: Visiting Regulations Program State Attorney visit §540.46, §543.12 through §543.16. Sec (28 CFR part §540 through an authorized attorney visit from a retained attoreny (sic). Also a violation of a Sixth Amendment Right to consult with counsel, causing injury to Applicant, attorney Mr. Dey and private investigator Mr. Rivera, withdrew as retained counsel and investigator, continuous denial access in the F.C.I. Allenwood Federal Facility, causing Applicant mental health, stress, physical anguish, etc.

Id.

By Response dated December 13, 2013, Plaintiff's Tort claim was denied as follows:

> This office is in receipt of your claim in which you seek compensation in the amount of $10,000,000.00 for an alleged personal injury suffered in September 2010. You claim your Due Process rights were violated when your attorney and private investigator were denied access to FCI-Otisville[2].
>
> After review, your claim has been denied because you have failed to submit your administrative claim within the time restrictions contained in the applicable statutes and federal regulations. According to 28 U.S.C. §2401(b), "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing by certified or registered mail, or notice of final denial of the claim by the agency to which it was presented."
>
> If you are dissatisfied with this decision, you may bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this memorandum.

(Doc. 31-1 at 8, December 13, 2013 Response).

On March 31, 2014, Plaintiff filed the instant action challenging the alleged denial of an attorney visit and the response to this FOIA requests. (Doc. 1, complaint).

---

[2]This is an apparent typographical error, as noted in Kaplan's filed administrative tort claim, the injury actually occurred at FCI-Allenwood. (See Doc. 31-1 at 9-10, Claim for Damage, Injury or Death)

Specifically, Plaintiff states that "Defendant Ebert contacted Defendant Schrader which contacted Defendant John Doe who worked in the visitation room on that day [August 29, 2010] that counsel was to come speak with Mr. Kaplan, and prior before that Defendant [Ebert] possibly could have spoken to the Governor [Christopher Christie - FBI Edward Quinn - Brian Howe - James Cahill - Atty Steven Altman] and made sure Mr. Kaplan was unable to speak with his Attorney regarding his appeal or to disclose to the Attorney the Political corruption of the Governor and Administration in his office." (Doc. 1, complaint at 8). He asserts that "the conduct of the Defendants was the proximate cause of damages sustained by the Plaintiff, such as loss of job, loss of assets, loss of family, which is priceless, this stimulates from not allowing the Plaintiff to see his Attorney to provide Counsel with information that would assist him in Mr. Kaplan's appeal process and other litigation matter." (Id. at 5).

Plaintiff believes that he is "being punished by the above named Defendants only because of the information he knew on the Governor [Christopher Christie] and the Administration in his office [their criminal acts], and the Defendant's unlawfully went against the BOP Policy and the United States Constitution when they unlawfully assisted in setting the Plaintiff up on

a Murder-for-Hire case..." (Id. at 7). He asserts that "the conduct of the Defendants was the proximate cause of damages sustained by the Plaintiff, such as loss of job, loss of assets, loss of family, which is priceless, this stimulates from not allowing the Plaintiff to see his Attorney to provide Counsel with information that would assist him in Mr. Kaplan's appeal process and other litigation matter."

As a result, Plaintiff claims that the named Defendants "caused emotional distress upon [Plaintiff] which they are liable in this instant case." (Id. at 8). He further believes that he is "presently being held 'false imprisonment' because of such 'civil conspiracy' that Defendants have jointly and sadistically used against [him]." (Id. at 14).

Plaintiff further claims that Defendants have fraudulently concealed exculpatory evidence by not releasing the information requested in his FOIA requests. (Id. at 17-18). He believes that Defendants "jointly conspired" to "keep [Plaintiff] in prison unlawfully." (Id.). For relief, Plaintiff seeks compensatory and punitive damages. (Id. at 19).

On April 7, 2014, the Northeast Regional Office responded to Plaintiff's FOIA request with the following:

> This is in response to the above referenced Freedom of Information Act (FOIA) request. Specifically, you seek a copy of

2 recorded telephone calls made on October 28, 2013 to [redaction] and [redaction]. You also seek a copy of transcript(s) for both calls.

In response to your request for a transcript of the phone calls, staff located 1 page (record reflecting the date, time, duration, phone number and city) responsive to your request. This page was forwarded to this office for a release determination. After careful review we have determined that 1 page can be released with certain information redacted and is enclosed.

Pursuant to the Freedom of Information Act, 5 U.S.C. §552, records are redacted or withheld in full from disclosure to you under the following exemptions:

(b)(6); (b)(7)(C).

In response to your request for a copy of the 2 recorded phone calls, a search was conducted and 2 telephone conversation(s) have been preserved. However, prior to processing your request further, you are required to provide a signed waiver under the Privacy Act authorizing release from the individuals(s) you conversed with during this telephone conversation.

Pursuant to Title 28 Code of Federal Regulations, Section 16.9 or 16.45, the material herewith denied may be appealed to the Assistant Attorney General. This written appeal must be received by the Office of Information Policy (OIP) within 60 days from the date of this letter. Both the appeal letter and face of the envelope should be marked "Freedom of Information Act Appeal," and should be addressed to the Office of Information Policy, U. S. Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-001.

(Doc. 31-1 at 16, 17, Northeast Regional Office Response).

On April 22, 2014, Plaintiff filed an appeal of the Northeast Regional

Office's response, where it was received by the Office of Information Policy,

on May 1, 2014. (Doc. 31-1 at 21, Notice of Appeal).

On July 17, 2014 the Office of Information Policy responded to Plaintiff's

appeal with the following:

> You appealed from the action of the Federal Bureau of Prisons (BOP) on your request for access to two recorded calls made on October 28, 2013, in both audio and transcript format.
>
> After carefully considering your appeal, I am affirming BOP's action on your request. In order to provide your with the greatest possible access to responsive records, your request was reviewed under both the Privacy Act of 1974 and the Freedom of Information Act. This Office has determined that the records responsive to your request are exempt from the access provision of the Privacy Act. See 5 U.S.C. §552a(j)(2); see also 28 C.F.R. §16.97 (2013). For this reason, your appeal has been reviewed under the FOIA.
>
> The FOIA provides for disclosure of many agency records. At the same time, Congress included the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities.
>
> BOP properly withheld the requested records in full. With regard to those portions of the records pertaining to third parties, they are protected from disclosure under the FOIA pursuant to 5 U.S.C. §552(b)(7)(C). This provision concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties. See, e.g., Pendergrass v. DOJ, No. 04-112, 2005 WL 137824, at *6 (D.D.C. June 7, 2005)(concluding that BOP did not have to release any part of recording of inmate's telephone call to his

attorney without attorney's written consent). Further, BOP does not have the capability, and is not required to obtain new technology, to segregate your portions of the telephone conversation. See Milton v. DOJ, 842 F. Supp.2d 257, 260 (D.C. Cir. 2012).

With regard to the comment in your appeal letter seeking that the calls be transcribed, please be advised that the FOIA does not require federal agencies to answer questions or create records in response to a FOIA request, but rather is limited to requiring agencies to provide access to reasonably described, nonexempt records. See Students Against Genocide v. Dep't of State, 257 F.3d 828, 837 (D.C. Cir. 2001).

Please be advised that this Office's decision was made only after a fully review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of BOP in response to your request.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. §552(a)(4)(B).

(Doc. 31-1 at 26-27, July 17, 2014 Letter).

## IV.    Discussion

### A.  FOIA Requests

Before a plaintiff may seek relief from a district court for an executive agency's denial of a FOIA request, a plaintiff must first exhaust his administrative remedies. McDonnell v. United States, 4 F.3d 1227, 1240 (3d

Cir.1993)(holding that district court correctly declined to exercise subject matter jurisdiction where plaintiff failed to exhaust administrative remedies prior to filing suit); Pellegrino v. U.S. Transp. Sec. Admin., 855 F.Supp.2d 343, 365 (E.D.Pa.2012); Berg v. Barack Obama, 574 F.Supp.2d 509, 527 (E.D.Pa.2008); 5 U.S.C. §552(a)(6) (A)(i). Under FOIA, this requires a plaintiff to first file a request with the requisite executive agency and then fully exhaust administrative appeals before commencing an action in federal court. Id.; see also Sindram v. Fox, 374 App'x 302, 304 (3d Cir.2010) (affirming dismissal of FOIA action for failure to exhaust administrative remedies).

### 1. **FOIA No. 2011-01457**

The record before this Court demonstrates that Kaplan's FOIA No. 2011-01457 was received by the Bureau of Prisons on October 25, 2010. A response dated March 31, 2011, notified Plaintiff that the BOP was not in possession of the requested documents and that he could request to review his Central File by contacting local staff in regard to BOP records. Plaintiff was further notified that if he was dissatisfied with this response, he was to appeal to the Attorney General by filing a written appeal within sixty days from March 31, 2011, the date of the BOP's response. Plaintiff took no further

action with respect to FOIA No. 2011-01457.  As such, Plaintiff has not met his burden of establishing administrative exhaustion of FOIA No. 2011-01457, and Defendant's motion for summary judgment will be granted. Roma v. United States, 344 F.3d 352, 363 (3d Cir. 2003) (noting "the requirement that the appropriate federal agency act on a claim before suit can be brought is jurisdictional and cannot be waived").

### 2.  FOIA No. 2014-01476

The record reveals that Plaintiff submitted FOIA No. 2014-01476 on November 12, 2013, where it was received by the BOP on November 18, 2013.

On March 31, 2014, Plaintiff filed the instant action.

On April 7, 2014, the Northeast Regional Office responded to Plaintiff's FOIA No. 2014-01476 request for release of "transcripts and/or audio recordings" of the two phone calls he placed on October 28, 2013. The Northeast Region notified Plaintiff that, absent a waiver from the individual Plaintiff conversed with in these telephone calls, authorizing release of the calls, such information was withheld in full from disclosure under exceptions (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. §552. Plaintiff

was further informed of his right to appeal the denial of requested information to the Assistant Attorney General by filing an appeal with the Officer of Information Policy.

On May 1, 2014, Plaintiff filed an appeal with the Office of Information Policy, which, on July 17, 2014, affirmed the BOP's withholding of the requested records. Plaintiff was advised that if he was dissatisfied with the decision, his remedy was to file a lawsuit in federal district court in accordance with 5 U.S.C. §552(a)(4)(B).

It is clear from the chronological background of this action that Plaintiff has failed to exhaust his administrative remedies before filing the above captioned action, as the action was filed prior to Plaintiff seeking final review of his FOIA request. Thus, Defendants are entitled to summary judgment as a matter of law. McNeil v. United States, 508 U.S. 106, 111-112 (1993) (holding that a court is without jurisdiction to rule on a prematurely filed action even if an agency denies the related administrative claim soon after the federal lawsuit is filed); Ahmed v. Dragovich, 297 F.3d 201, 209, 210 (3d Cir. 2002)(finding that exhaustion requires completion of the entire administrative-remedy process prior to filing suit)(emphasis added).

### B. **FTCA Claim**

The Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. §2671 et seq., is a statutory waiver of sovereign immunity for tort claims. Gotha v. United States, 115 F.3d 176, 179 (3d Cir.1997). The FTCA allows the government to be sued "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C.A. §2674. However, as the FTCA is an express waiver of sovereign immunity, strict compliance with its provisions is required. Livera v. First Nat'l Bank, 879 F.2d 1186, 1194 (3d Cir.1989).

As a prerequisite to suit under the FTCA, a claim must first be presented to the federal agency and be denied by the agency. The FTCA provides:

> An action shall not be instituted against the United States for money damages for injury or loss of property or personal injury ··· unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. §2675(a). "The statutory language is clear that a court does not have jurisdiction before administrative remedies have been exhausted, and a court must dismiss any action that is initiated prematurely." Wilder v. Luzinski, 123 F. Supp.2d 312, 313 (E.D.Pa.2000) (citing McNeil v. United States, 508 U.S. 106, (1993); Wujick v. Dale & Dale, 43 F.3d 790, 793-94 (3d

Cir.1994)).

Moreover, a claimant must abide by the strict time requisites codified in 28 U.S.C. §2401(b) or its tort claim under the FTCA will be "forever barred."[3] See Bialowas v. United States, 443 F.2d 1047, 1049 (3d Cir.1971). In order to sue the United States in District Court and avoid violating the FTCA's express statute of limitations, a tort claim must be "presented in writing to the appropriate Federal agency within two years after such claim accrues...." 28 U.S.C. § 2401(b); see also Bialowas, 443 F.2d at 1049. Section 2401's "time bar is strictly construed." Livera v. First Nat. State Bank of N.J., 879 F.2d 1186, 1195 (3d Cir.1989). The claim accrues "when a plaintiff knows of both the existence and the cause of his injury." Miller v. Phila. Geriatric Center, 463 F.3d 266, 272 (3d Cir.2006). The claim is "presented" (thus tolling the running of the limitations period) when an executed SF-95 and a claim for money damages in a sum certain are received by the government agency. 28 C.F.R. §14.2.

---

[3]28 U.S.C. §2401(b) states:
[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal Agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

On November 27, 2013, Kaplan filed his SF-95 Tort claim regarding the denial of an attorney visit in September, 2010. On December 13, 2013, the BOP Northeast Regional Office denied Plaintiff's Tort claim as having not been filed within the time restrictions prescribed by 28 U.S.C. §2401(b). Consequently, Plaintiff's instant action was filed outside of the two-year statute of limitations.

Kaplan concedes that he brought his claim more than two years after it accrued, however, he believes that he is entitled to equitable tolling of the statute of limitations.

Equitable tolling may apply to claims brought against the Government. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 93-96(1990) (because federal statutes of limitation are not jurisdictional, "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States"). In Hughes v. United States, the Third Circuit first held that in appropriate circumstances, equitable tolling could apply to claims brought under the FTCA. 263 F.3d 272, 278 (3d Cir.2001). This holding was re-affirmed in Santos v. United States, 559 F.3d 189, 197 (3d Cir.2009) ("[W]e think that our holding in Hughes that there can be equitable tolling in suits under the FTCA remains good law ...").

The Court of Appeals cautioned in Santos, however, "a plaintiff will not receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim" because "[t]he principles of equitable tolling ... do not extend to 'garden-variety claims of excusable neglect.'" Santos, 559 F.3d at 197 (citing Irwin, 498 U.S. at 96). The "remedy of equitable tolling is extraordinary, and we will extend it only sparingly." Hedges v. United States, 404 F.3d 744, 751 (3d Cir.2005). The Court further noted in Santos that "it is especially appropriate to be restrictive with respect to extension of equitable tolling in cases involving the waiver of the sovereign immunity of the United States." Santos, 559 F.3d at 197 (citing United States v. Kubrick, 444 U.S. 111, 117-19 (1979)).

Equitable tolling may apply to FTCA claims in three instances:

(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

Hedges, 404 F.3d at 751(internal citations omitted).

Kaplan contends that "pursuant to 'Civil Conspiracy' and 'Fraudulent Concealment' there is 'NO' statute of limitations if there is an ongoing conspiracy against Mr. Kaplan and withholding evidence and documents from

him so he is unable to properly defend himself in court or present them to his Attorney, furthermore in this pleading Mr. Kaplan would direct this Court's attention to the attached 'FOIA Request' in which the government has withheld such documents from Mr. Kaplan, establishing 'Fraudulent Concealment' and 'Civil Conspiracy' against Mr. Kaplan." (Doc. 32, Brief in opposition at 29). The Court is not persuaded by Plaintiff's argument, as Plaintiff has failed to allege that he has been misled by Defendants, been preventing from filing an FTCA, or any other claim, or that he has timely asserted his rights in an incorrect forum. <u>See</u>, <u>e.g.</u>, <u>Mishra v. Nolan, 187 Fed. App'x 136 (3d Cir.2006)</u> (finding that the plaintiff offered no "grounds that would support the application of the equitable tolling doctrine" and thus, holding that the plaintiff's action "was filed well after the statutory period had elapsed"). Therefore, Plaintiff's present FOIA action is barred by the statute of limitations.

Moreover, as indicated by the August 30, 2010 letter from Plaintiff's attorney, stating that he had attempted to visit Plaintiff on August 29, 2010, but was refused admittance, Plaintiff was on notice on, or about, August 30, 2010, of the alleged injury that had occurred. (<u>See</u> Doc. 32-1 at 5, Aug. 30, 2015 Letter). The Court finds Plaintiff's attempt to marry the August 29, 2010

denial of an attorney visit, to a July 17, 2014 withholding of documents under the FOIA, as an "ongoing conspiracy", unpersuasive to support tolling the statute of limitations. Plaintiff had a duty to promptly investigate his alleged claim or risk losing it. United States v. Kubrick, 444 U.S. 111(1979)(holding that the statute of limitations barred the action because the plaintiff was aware of both his injury and the facts surrounding its causation). Accordingly, Defendants are entitled to summary judgment.

## C. Bivens Claim

### 1. Statute of Limitations

Plaintiff claims that he was denied an attorney visit and the Defendants conspired to deprive him of such visit. Such claims are asserted pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), in which the Supreme Court created a federal counterpart to the remedy created in 42 U.S.C. §1983. See Egervary v. Young, 366 F.3d 238, 246 (3d Cir.2004) (stating that Bivens actions are the federal counterpart to Section 1983). In order to state a claim under Bivens, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was

caused by a person acting under color of federal law. See Couden v. Duffy, 446 F.3d 483, 491 (3d Cir.2006) (stating that under Section 1983, "an individual may bring suit for damages against any person who, acting under color of state law, deprives another individual of any rights, privileges, or immunities secured by the United States Constitution or federal law," and that Bivens held that a parallel right exists against federal officials).

Based on the record before this Court, it appears that Plaintiff's claim's are time-barred. "A Bivens claim...is 'characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims.' "Peguero v. Meyer, 520 Fed. App'x 58, 60 (3d Cir.2013) (quoting Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir.2010)). In Pennsylvania, the statute of limitations for personal injury claims is two years. See, e.g., Wilkerson v. Samuels, 524 Fed. App'x 776, 778 (3d Cir.2013). However, determining when a Bivens cause of action accrues is a matter of federal law, Smith v. Wambaugh, 887 F.Supp. 752, 755 (M.D.Pa.1995), and a Bivens claim accrues when the plaintiff knows of or has reason to know of the injury. Hughes v. Knieblher, 341 Fed. App'x 749, 752 (3d Cir.2009) (citing Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir.1998)). A district court must incorporate state equitable tolling

principles, unless they conflict with federal law and policy. Lake v. Arnold, 232 F.3d 360, 369 (3d Cir.2000). "Equitable tolling is a rare remedy to be applied in unusual circumstances." Wallace v. Kato, 549 U.S. 384, 396 (2007). As mentioned earlier, tolling is generally only appropriate "(1) where the defendant has actively misled the plaintiff respecting the plaintiffs cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." Santos v. United States, 559 F.3d 189, 197 (3d Cir.2009). To obtain the benefit of equitable tolling, a party also must show that "she exercised due diligence in pursuing and preserving her claim." Santos, 559 F.3d at 197.

Plaintiff's cause of action accrued on, or about, August 30, 2010, when Plaintiff's attorney notified him that he was denied entry to the prison. This is supported by Plaintiff's own documentation, in which he writes to the Warden on August 30, 2010, complaining about the denial and informing the warden that due to time constraints, pursuing administrative exhaustion would be futile. Thus, Plaintiff was aware of the incident and his responsibility to pursue and preserve it. As such, the statute of limitations ran out on Plaintiff's Bivens

claim in 2012, well before Plaintiff filed the instant action.[4] Gordon v. Lowell, 95 F.Supp.2d 264, 272 (E.D.Pa.2000) ("The limitations period will begin to run even if Plaintiffs do not know all of the facts necessary for their claim.... They need only sufficient notice to alert them of the need to begin investigating."); Zeleznik v. United States, 770 F.2d 20, 22–23 (3d Cir.1985), cert. denied, 475 U.S. 1108(1986) ("The rationale of the discovery rule ... is that the statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he needs investigate to determine whether he is entitled to redress."). The Court finds that Plaintiff has not argued any facts that would allow the Court to consider equitably tolling the statute of limitations such that would render Plaintiff's action timely. Accordingly, Defendants are entitled to judgment as a matter of law.

### 2. Conspiracy

To the extent that Plaintiff's complaint raises accusations of conspiracy, in order to demonstrate a conspiracy, "a plaintiff must show that two or more

---

[4]The Court notes that the statute ran even before Plaintiff filed his first informal resolution on April 27, 2013 and subsequent, May 2, 2013 Administrative Remedy No. 734103-F1.

conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.' " Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir.1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)). Plaintiff has concluded that Defendants have conspired to violate his rights yet he has failed to evidence any facts showing an agreement or plan formulated and executed by the Defendants to achieve this conspiracy. Plaintiff cannot rely on unsupported claims of conspiracy. Without a factual showing which gives some substance to the conspiracy claims, Plaintiff's conspiracy claim amounts to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of wrongdoing by a Defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. See Young vs. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991) (conspiracy claims which are based upon pro se plaintiff's subjective suspicions and unsupported speculation properly dismissed under §1915(d)).

Here, Plaintiff has failed to introduce into this record any evidence which shows an agreement or plan formulated and executed by Defendants or anyone else which rises to the level of a conspiracy. At a minimum, absent some modicum of proof which tends to reveal the existence of an agreement

which is designed to deny the constitutional rights of the Plaintiff, he cannot maintain his conspiracy claim. In sum, Plaintiff's allegations, standing alone, are insufficient for a reasonable jury to return a verdict in his favor. Defendants' Motion for Summary Judgment should be granted.

Moreover, to the extent that Plaintiff claims that Defendants have conspired to "set him up" or entrap him and then falsely imprison him, it is well-settled that inmates may not use civil rights actions to challenge the fact of their confinement or to seek earlier or speedier release. Preiser v. Rodriguez, 411 U.S. 475 (1975). The United States Court of Appeals for the Third Circuit has similarly recognized that civil rights claims seeking release from confinement sounded in habeas corpus. See Georgevich v. Strauss, 772 F.2d 1078, 1086 (3d Cir.1985).

Nor can Plaintiff, under Heck v. Humphrey, 512 U.S. 477 (1994), maintain a cause of action for damages for unlawful imprisonment or detention until the basis for that detention, whatever that may be, is rendered invalid. In Heck, the United States Supreme Court announced that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by acts whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction

or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination or called into question by a federal court's issuance of a writ of habeas corpus."

The favorable termination rule set forth in Heck has been applied to civil conspiracy claims brought under sections 1985 and 1986. Cook v. City of Phila., 179 F. App'x 855, 859 (3d Cir. 2006) (finding that plaintiff's section 1985 was barred by Heck) (citing Bougher v. Univ. of Pittsburgh, 882 F.2d 74, 79 (3d Cir. 1989); Jones v. City of Phila., 491 F. Supp. 284, 288 (E.D. Pa. 1980)); Kennedy, 2015 U.S. Dist. LEXIS 31722, *3 (citing McQuillion v. Schwarzenegger, 369 F.3d 1091, 1097 n.4 (9th Cir. 2004)); Stubbs v. City of Wilkes-Barre, 2011 U.S. Dist. LEXIS 51893, *6 (M.D. Pa. 2011) (Smyser, M.J.) ("Although Heck dealt with a 42 U.S.C. §1983 claim, the reasoning of Heck has been applied to 42 U.S.C. §1985(3) and 42 U.S.C. §1986 claims as well."), adopted by, 2011 U.S. Dist. LEXIS 51957 (M.D. Pa. 2011) (Conner, J.); see Saunders v. Bright, 281 F. App'x 83, 84 n.4, 85 (3d Cir, 2008). Heck "delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction which success in that tort action would impugn." Heck, 512 U.S. 486-87. Because there is no indication in the record

that there has been a successful prior adjudication pertaining to Plaintiff's alleged unlawful conviction or sentence, it is appropriate to dismiss Plaintiff's conspiracy claim for damages.

### 3. **Personal Involvement**

To state a claim under Bivens, Plaintiff must allege that he was deprived of a federal right by a person who was acting under color of federal law. See Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992); West v. Atkins, 487 U.S. 42, 48, (1988).

It is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 1546 F.2d 1077, 1082 (3d Cir.1976). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. Sutton v. Rasheed, 323 F.3d 236, 249–250 (3d Cir.2003). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. Id. As the

Court stated in [Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1998)](Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1998)):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

To the extent that Plaintiff argues his constitutional rights were violated when documents were concealed from him after filing a FOIA request, the Court finds Defendants are entitled to summary judgment, as none of the named Defendants, Warden Ebert, Counselor Schrader, or Visitation Officer Doe, had any personal involvement in addressing Plaintiff's FOIA request. See [Sutton, 323 F.3d at 249](Sutton, 323 F.3d at 249) (finding that personal involvement or some affirmative action on the part of a defendant is necessary before he or she may be found liable for a civil rights violation).

## D.  **Preliminary Injunction**

Plaintiff seeks an emergency injunction "directing the Defendants to cease all constitutional violation such as withholding discovery/interfering with access to the courts and fraudulently concealing such conspiracy-setting up Mr. Richard P. Kaplan."

Preliminary injunctive relief is extraordinary in nature and should issue

in only limited circumstances. See American Tel. and Tel. Co. V. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994), cert. denied, 514 US. 1103 (1995). Moreover, issuance of such relief is at the discretion of the trial judge. Orson, Inc. v. Miramax Film, Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993). In determining whether to grant a motion seeking preliminary injunctive relief, courts in the Third Circuit consider the following four factors:

(1)   likelihood of success on the merits;
(2)   irreparable harm resulting from a denial of relief;
(3)   the harm to the non-moving party if relief is granted; and
(4)   the public interest.

United States v. Bell, Civ. No. 1:CV-01-2159, 2003 WL 102610, *2 (M.D. Pa. January 10, 2003)(J. Conner)(internal citations omitted). It is the moving party that bears the burden of satisfying these factors. Id. The standards for a temporary restraining order are the same as those for a preliminary injunction. Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

Perhaps the most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted, the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. See Continental Group, Inc. v. Amoco Chems. Corp., 614 F.2d 351, 356 (3d Cir. 1980). Irreparable injury is "potential harm which cannot be

redressed by a legal or equitable remedy following a trial ." Instant Air Freight, 882 F.2d at 801. A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." Id. The relevant inquiry is whether the party moving for the injunctive relief is in danger of suffering the irreparable harm at the time the preliminary injunctive relief is to be issued. Id. Speculative injury does not constitute a showing of irreparable harm. Continental, 614 F.2d at 359; see also Public Serv. Co. v. West Newbury, 835 F.2d 380, 383 (1st Cir. 1987). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Instant Air Freight, 882 F.2d at 801 (quoting Sampson v. Murray, 415 U.S. 61, 90 (1964)). Of course, a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge. See Weaver v. Wilcox, 650 F. 2d 22, 27 n. 13 (3d Cir. 1981)(prisoner's transfer from the prison moots claim for injunctive and declaratory relief with respect to prison conditions, but not claims for damages.)

Based on Plaintiff's failure to prevail on the merits of the instant civil rights action, Plaintiff's motion for emergency injunction (Doc. 38) and motion

for hearing on motion for emergency injunction (Doc. 39) will be denied.

## V.    **Conclusion**

Defendants are entitled to summary judgment with respect to Plaintiff's

FOIA, FTCA and <u>Bivens</u> Claims. Based on the Court's conclusion herein,

Plaintiff's motion for emergency injunction will be denied. An appropriate order

shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated:** September 30, 2015
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2014 MEMORANDA\14-0605-01.wpd